# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| OMAR CHAPA, M.D. | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| vs. | ) CASE NO. |
| | ) |
| MEHARRY MEDICAL COLLEGE | ) |
| | ) |
|     **Defendant.** | ) |
| | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. NATURE OF THE CASE

1. Plaintiff, Omar Chapa, M.D. ("Chapa" or "Plaintiff"), by counsel, brings this action against Defendant, Meharry Medical College, ("Defendant"), for violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq.*, the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §12101 *et. seq.*, and the Tennessee Disability Act ("TDA").

### II. PARTIES

2. Chapa is a resident of Nashville, Tennessee, who at all times relevant to this action resided within the geographical boundaries of the Middle District of Tennessee.

3. Defendant is located and conducts business within the geographical boundaries of the Middle District of Tennessee.

### III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343; 28 U.S.C. §1367; 42 U.S.C. §2000e-5(f)(3); and 42 U.S.C. §12117.

5. Defendant is an "employer" as that term is defined by 42 U.S.C. §2000e(b), 42 U.S.C. §12111(5), and Tennessee Human Rights Act ("THRA").[1]

6. Chapa was an "employee" as that term is defined by 42 U.S.C §2000e(f), 42 U.S.C §12111(4), and the THRA.

7. Plaintiff has a "disability" as that term is defined by 42 U.S.C. §12102(2) and the THRA.

8. Chapa satisfied his obligation to exhaust his administrative remedies having timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant alleging discrimination based on race, national origin, and disability. Chapa received the required Notice of his Right to Sue and timely files this action.

9. A substantial part of the events, transactions, and occurrences relevant to this lawsuit arose within the geographical environs of the Middle District of Tennessee; thus, venue is proper in this Court.

## IV. FACTUAL ALLEGATIONS

10. Defendant maintains a residency training program. Under said program, residents may also be employed by the Defendant.

11. Chapa was diagnosed with ADHD as a child. Said disability substantially limits several major life activities. Therefore, Chapa is a qualified individual with a disability under the ADA.

---

[1] Although the TDA does not define the term "disabled," the definition contained in the Tennessee Human Rights Act ("THRA") is applicable to TDA claims. *Jones v. Sharp Elecs. Corp.*, No. W2013-01817-COA-R3CV, 2014 WL 806131, at *3 (Tenn. Ct. App. Feb. 28, 2014) (*citing Barnes v. Goodyear Tire and Rubber Co.,* 48 S.W.3d 698, 705 (Tenn. 2000).

12. Chapa, who is Hispanic and a Mexican American, graduated with his masters in 2016 and his medical degree in 2020 from the Defendant. During his tenure, Chapa met or exceeded Defendant's legitimate performance expectations.

13. In or around July 2020, Chapa was hired by the Defendant into its residency program.

14. To become licensed, an individual must pass the United States Medical Licensing Examination ("USMLE") Step 3 examination. The National Board of Medical Examiners ("NBME") administers the Step 3 examination and may offer test center accommodations. However, Defendant may provide accommodations as to when the resident/employee must complete the Step 3 examination. Defendant's Step 3 policy required Chapa to take and pass USMLE's Step 3 examination prior to entering their Postgraduate Year Three.

15. On or about August 17, 2020, Dr. Arutiunian requested to meet with Chapa. In said meeting, Dr. Arutiunian began to yell and curse at Chapa. Chapa reported said interaction, but Defendant policies were not followed.

16. On or about February 4, 2021, Chapa emailed Dr. Ngo requesting an update to his complaint of Dr. Arutiunian. A second email was sent on or about February 5, 2021.

17. On or about June 28, 2021, Chapa was promoted from Postgraduate Year One to Postgraduate Year Two; however, due to alleged poor performance, he was subject to a "3-month remediation" period from July 1, 2021, to September 30, 2021. Under his "remediation" period, Chapa would be moved into a hybrid which required him to do the work of an intern and Postgraduate Year 2. Essentially, Chapa was required to work two jobs. Chapa felt targeted due to his disability since other residents told him that they had failed more quizzes than Chapa but were not subject to said "remediation" period.

18. On or about September 8, 2021, Chapa was working in the ICU. During said shift, Chapa was shoved twice by a travel nurse named Loreen (Last Name Unknown) ("Loreen"). Chapa reported said actions the same shift to the ICU Nurse Manager. In response, Dr. Fremont began to yell at Chapa and humiliated him for his alleged actions and for reporting the incident. Dr. Fremont then sent Chapa home for several days without explanation.

19. On or about September 15, 2021, Chapa was required to meet with Mark Smith ("Smith"), VP of HR, Dr. Esuruoso, and Dr. Fremont. Chapa was suspended without pay pending an anger/mental health evaluation.

20. On or about September 17, 2021, Chapa was permitted to rebut the suspension. During said hearing, Chapa complained of discrimination and retaliation. Following the conference call, his suspension was changed from mandatory to optional leave. Chapa chose not to take said leave. He also asked for a copy of the relevant documents, but his request was denied.

21. On or about September 22, 2021, Chapa emailed Dr. Esuruoso regarding his "remediation" period and noted that other residents had failed more times than him but were not subject to the same treatment. Defendant never responded.

22. On or about October 29, 2021. Chapa worked alongside Dr. Ngo in the clinic. Chapa asked Dr. Ngo why his professionalism score was decreased in the clinic. Dr. Ngo confirmed it was due to the ICU incident on or about September 8, 2021, which is separate from the ICU and not part of Dr. Ngo's supervision. Chapa complained of retaliation the same day.

23. On or about November 2, 2021, Dr. Akatue and the Defendant's Interim Dean emailed Chapa and noted that they were "privy" to the suspension and Chapa's claims of discrimination/retaliation.

24. On or about November 8, 2021, Chapa sought an accommodation due to his disability to pass the Step 3 examination. Said request was submitted to Dr. Akatue and Dr. Perkins-Davis.

25. On or about November 11, 2021, Defendant requested additional information from Chapa regarding his accommodation request. On or about November 16, 2021, Chapa provided said information.

26. On or about November 18, 2021, Defendant stated that, "[m]ost of the faculty and program leaders are [not] very familiar with this process evaluating and granting accommodations." Ultimately, an accommodation was neither formally denied nor approved as Defendant simply stopped discussing Chapa's request.

27. On or about February 3, 2022, Chapa emailed Dr. Ajayi and noted that he was still symptomatic from recently contracting COVID-19. In response, Dr. Ajayi told him to either return to work or use sick days. On or about February 4, 2022, Chapa confirmed with Defendant's HR that he was still covered under Defendant's COVID-19 sick leave policy (which meant he would still receive his regular pay) and that Dr. Ajayi was incorrect in his statement.

28. On or about February 14, 2022, Dr. Fremont denied Chapa's accommodation request but encouraged him to take unpaid, personal leave. Due to having no other option, Chapa declined to take unpaid, personal leave.

29. On or about February 15, 2022, Chapa met with Dr. Akatue regarding the hostile work environment incident in the ICU and his prior complaints. During said meeting, Dr. Akatue failed to address or remedy Chapa's concerns or complaints.

30. On or about March 3, 2022, Defendant provided Chapa with a contract non-renewal notice for failing to pass the Step 3 examination. On the same day, Defendant provided Chapa an extension until June 30, 2022, to submit a passing Step 3 examination.

31. On or about May 9, 2022, Chapa returned to the ICU. Upon his return, Dr. Ajayi told Chapa that he would continue working with Dr. Fremont. During the conversation, Dr. Ajayi put his finger in Chapa's face and said, "I am your chief, you wait before speaking." Following said conversation, Dr. Ajayi reported Chapa.

32. On or about May 17, 2022, a hearing was held before the Clinical Competency Committee. Following said hearing, it was determined that the Clinical Competency Committee could not address Chapa's concerns/complaints and requested that the Chief Academic Officer, Dr. Jeannette South-Paul ("South-Paul") address Chapa's concerns/complaints.

33. Following the non-renewal contract notice, Chapa took personal leave to study for the Step 3 examination. He passed the examination on May 18, 2022. Chapa notified Dr. Esuruoso, Chapa's supervisor, on the same day. Dr. Esuruoso responded that Chapa's contract would not be renewed due to Defendant already submitting funding for the next academic year which did not include Chapa's position.

34. Following said events, Chapa received a negative evaluation.

35. Chapa received an email from South-Paul on or about May 19, 2022, where she stated that by taking time off to study for the Step 3 examination, Chapa delayed his own residency completion. Further, South-Paul told Chapa to "pause before reacting negatively to every encounter".

36. In response to an email from Chapa, South-Paul responded on or about June 13, 2022, stating that Chapa's "emails are not helpful".

37. Chapa was terminated on or about June 15, 2022, for "unprofessionalism."

38. On or about June 23, 2022, the Defendant reached an agreement with the National Labor Relations Board and agreed to provide a neutral reference and/or letter of recommendation if requested.

39. Due to his unlawful termination, Chapa requested a letter of recommendation from Defendant in order to transfer/apply to a different institution.

40. Said request was unlawfully denied in retaliation for engaging in protected activity.

41. Chapa has been damaged as result of Defendant's actions.

## V. CAUSES OF ACTION

### COUNT I: RACE DISCRIMINATION

42. Chapa hereby incorporates paragraphs one (1) through forty-one (41) of his Complaint as if the same were set forth at length herein.

43. Defendant discriminated against Chapa by terminating his employment and subjecting him to a hostile work environment because of his race.

44. Defendant's actions were intentional, willful, and in reckless disregard of Chapa's rights as protected by Title VII of the Civil Rights Act of 1964 and the TDA.

45. Chapa has suffered damages as a result of the Defendant's unlawful actions.

### COUNT II: NATIONAL ORIGIN DISCRIMINATION

46. Chapa hereby incorporates paragraphs one (1) through forty-five (45) of his Complaint as if the same were set forth at length herein.

47. Defendant discriminated against Chapa by terminating his employment and subjecting him to a hostile work environment because of his national origin.

48. Defendant's actions were intentional, willful, and in reckless disregard of Chapa's rights as protected by Title VII of the Civil Rights Act of 1964 and the TDA.

49. Chapa has suffered damages as a result of the Defendant's unlawful actions.

## COUNT III: RETALIATION

50. Chapa hereby incorporates paragraphs one (1) through forty-nine (49) of his Complaint as if the same were set forth at length herein.

51. Chapa engaged in protected activity when he opposed race- and national origin-based discrimination by making a complaint to Defendant.

52. Defendant retaliated against Chapa by terminating his employment for engaging in protected activity and subjecting him to a hostile work environment.

53. Defendant's actions were intentional, willful, and in reckless disregard of Chapa's rights as protected by Title VII of the Civil Rights Act of 1964 and the TDA.

54. Chapa has suffered damages as a result of the Defendant's unlawful actions.

## COUNT IV: ADA – DISABILITY DISCRIMINATION

55. Chapa hereby incorporates paragraphs one (1) through fifty-four (54) of his Complaint as if the same were set forth at length herein.

56. Defendant violated Chapa's rights by failing to accommodate his disabilities, terminating his employment due to his disability, and/or retaliating against him for his request and need for an accommodation.

57. Defendant discriminated against Chapa on the basis of his disability by failing to engage in the interactive process in good faith and denying her reasonable accommodations.

58. Defendant's actions were intentional, willful, and in reckless disregard of Chapa's rights under the Americans with Disabilities Act and TDA.

59. Chapa suffered damages as a result of Defendant's unlawful actions.

## COUNT V: DISABILITY RETALIATION

60. Chapa hereby incorporates paragraphs one (1) through fifty-nine (59) of his Complaint as if the same were set forth at length herein.

61. Chapa engaged in protected activity when he complained about discrimination because of his disability.

62. Defendant retaliated against Chapa by subjecting him to a hostile work environment and terminating his employment.

63. Defendant's actions were intentional, willful, and in reckless disregard of Chapa's rights as protected by the Americans with Disabilities Act and TDA.

64. Chapa suffered damages as a result of Defendant's unlawful actions.

## COUNT VI: PROMISSORY ESTOPPEL

65. Chapa hereby incorporates paragraphs one (1) through sixty-four (64) of his Complaint as if the same were set forth at length herein.

66. Defendant made a definite and substantial promise to Chapa upon which Defendant expected Chapa to rely. Specifically, Defendant promised Chapa that if he passed the Step 3 examination by June 30, 2022, he would be reinstated. Chapa, relying on this promise, passed the Step 3 examination and notified Defendant prior to June 30, 2022.

67. Chapa reasonably relied on the Defendant's promise to his detriment.

68. As a result of Defendant's actions, Chapa has suffered damages and injustice can only be avoided by enforcement of that promise.

69. Chapa suffered damages as a result of Defendant's unlawful actions.

## VI. REQUESTED RELIEF

WHEREFORE, Plaintiff, Omar Chapa, M.D., respectfully requests that this court enter judgment in his favor and award him the following relief:

1. Reinstate Chapa's employment to the position, salary, and seniority level he would have enjoyed but for Defendant's unlawful actions; and/or payment to Chapa of front pay in lieu thereof;

2. All wages, benefits, compensation, and other monetary loss suffered as a result of Defendant's unlawful actions;

3. Provide a neutral reference letter to Plaintiff and comply with any other requests from third-parties regarding Plaintiff's education and/or employment;

4. Compensation for any and all other damages suffered as a consequence of Defendant's unlawful actions;

5. Compensatory damages;

6. Punitive damages;

7. All costs and attorney's fees incurred as a result of bringing this action;

8. Pre- and post-judgement interest on all sums recoverable; and

9. All other legal and/or equitable relief this Court sees fit to grant.

Respectfully submitted,

*s/Kyle F. Biesecker*_____
Kyle F. Biesecker, Attorney No. 28872
BIESECKER DUTKANYCH & MACER, LLC
3200 West End Avenue, Suite 500
Nashville, Tennessee 37203
Telephone: (615) 783-2171
Facsimile: (812) 424-1005
E-Mail: kfb@bdlegal.com
*Attorney for Plaintiff, Omar Chapa*

**DEMAND FOR JURY TRIAL**

Plaintiff, Omar Chapa, by counsel, requests a trial by jury on all issues deemed so triable.

        Respectfully submitted,

        *s/Kyle F. Biesecker*_____
        Kyle F. Biesecker, Attorney No. 28872
        BIESECKER DUTKANYCH & MACER, LLC
        3200 West End Avenue, Suite 500
        Nashville, Tennessee 37203
        Telephone: (615) 783-2171
        Facsimile: (812) 424-1005
        E-Mail: kfb@bdlegal.com
        *Attorneys for Plaintiff, Omar Chapa*